UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) Case No. 2:17-cr-20003-SLD |
| | ) |
| ERNESTO VASQUEZ, | ) |
| | ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court are Defendant-Petitioner Ernesto Vasquez's *pro se* motion for resentencing, ECF No. 52, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Motion to Vacate"), ECF No. 54. For the reasons that follow, the *pro se* motion is MOOT, and the Motion to Vacate is DENIED.

**BACKGROUND**

On December 22, 2016, a criminal complaint was filed charging Vasquez with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Compl. 1, ECF No. 1. Vasquez was arrested on the complaint on December 28, 2016, *see* Warrant Returned Executed, ECF No. 7, and subsequently indicted by a grand jury on one count of possession of 500 grams or more of a substance containing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii), Indictment 1, ECF No. 9.

Diana Lenik was appointed to represent Vasquez. *See* Dec. 28, 2016 Min. Entry. On June 7, 2017, the grand jury returned a superseding indictment charging Vasquez with conspiracy to possess with intent to distribute and to distribute 500 grams or more of mixtures or substances containing methamphetamine and 50 grams or more of methamphetamine (count one) and possession of a firearm while being an unlawful user of controlled substances in violation of

1

18 U.S.C. § 922(g)(3) (count two).  Superseding Indictment 1–5, ECF No. 19.  Vasquez pleaded guilty to both counts of the superseding indictment on September 22, 2017 without a written plea agreement.  Sept. 22, 2017 Min. Entry.

The United States Probation Office prepared a presentence investigation report ("PSR") in advance of sentencing.  *See* PSR, ECF No. 35.  The PSR listed Vasquez's total offense level as 33, *id.* ¶ 45, and his criminal history category as II, *id.* ¶ 48.  As such, it listed his Sentencing Guidelines range for imprisonment as 151 to 188 months on count one and 120 months (the statutory maximum) on count two.  *Id.* ¶ 77.  Vasquez lodged various objections to the PSR, *id.* at 18–20, which Judge Colin Bruce, who was then presiding over the case, overruled or found moot, Statement of Reasons 5–7, ECF No. 43.

At the sentencing hearing held on January 19, 2018, Judge Bruce sentenced Vasquez to 144 months of imprisonment on count one and 120 months of imprisonment on count two, to be served concurrently, and five years of supervised release.  Judgment 1–3, ECF No. 41.  Vasquez did not appeal.

In January 2019, Vasquez mailed a letter to the court which was filed as a motion for resentencing.  Pro Se Mot. Resentencing 1.  In the letter, Vasquez noted that Judge Bruce had been removed from criminal cases and suggested that Judge Bruce was biased against him.  *See id.*  This was a reference to *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") which had come to light in 2018.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).  Vasquez asked for counsel so that he could file a motion for resentencing.  Pro Se Mot. Resentencing 1.  The case was reassigned to

Judge James Shadid, Jan. 17, 2019 Text Order, who appointed the Federal Public Defender to represent Vasquez, Jan. 18, 2019 Text Order, mooting the *pro se* motion.

On March 11, 2020, counsel filed the Motion to Vacate. The Motion to Vacate asserts two claims for relief: first, that Judge Bruce violated Vasquez's due process rights because he was actually biased in favor of the Government, Mot. Vacate 4–9; and second, that Judge Bruce violated 28 U.S.C. § 455(a)[1] by failing to recuse himself due to an appearance of bias, *id.* at 9–11. The case was reassigned to this Court. Mar. 20, 2020 Text Order.

The Government filed a response arguing that: 1) Vasquez cannot show that Judge Bruce was actually biased against him, Resp. 14–23, ECF No. 55; 2) that his § 455(a) claim is not cognizable because any failure to recuse does not constitute a complete miscarriage of justice, *id.* at 23–28; 3) that Vasquez procedurally defaulted his claims by failing to raise them on appeal, *id.* at 29–31; and 4) that Vasquez's § 455(a) claim is untimely,[2] *id.* at 32–42. Vasquez filed a reply disputing these arguments. *See generally* Reply, ECF No. 56. He then filed a notice of supplemental authority. Not. Suppl. Auth., ECF No. 65 (pointing the Court to a Seventh Circuit case addressing due process bias claims).

## DISCUSSION

**I.     Legal Standard**

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521

---

[1] Throughout the briefing, Vasquez refers to 18 U.S.C. § 455(a). *See, e.g.*, Mot. Vacate 9. Presumably this is a typographical error. No such statute exists.
[2] The Government does not contest the timeliness of the due process claim because a tolling agreement covers that claim. *See* Resp. 32 n.6.

3

(7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

## II.  Analysis

Both of Vasquez's claims are based, at least in part, on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, months after Vasquez was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). Vasquez asserts that these communications—along with other documents and information—demonstrate that Judge Bruce was biased in favor of the Government and against him, violating his due process rights, *see, e.g.*, Mot. Vacate 5, and, alternatively, that they demonstrate an appearance of impropriety requiring Judge Bruce to recuse himself from Vasquez's case, *see id.* at 9. The Court first addresses the Government's procedural default argument as that pertains to both claims and then each claim, and any defenses specific to each claim, separately.

### A.  Procedural Default

The Government argues that Vasquez procedurally defaulted both of his claims by failing to raise them on appeal. Resp. 29. Vasquez replies that he "had no opportunity to raise Judge Bruce's bias and failure to recuse on direct appeal as he had no evidence to support such a

4

claim." Reply 10.  Anticipating this, the Government argues that the *ex parte* communications between the USAO and Judge Bruce "had nothing to do with [Vasquez's] case, and [Vasquez] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases." *Id.* at 29, 31.

The Court agrees with Vasquez.  "A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added).  And here, the evidence forming the basis of Vasquez's claim did not become known to him until after his time to appeal passed.  The Government provides no case law support for its argument that Vasquez cannot rely on the *ex parte* communications to excuse his default.  Instead, it appears to be making an argument that the communications do not support Vasquez's claim.  But that is better considered as an argument on the merits.

  **B.  Due Process**

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied

primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the *ex parte* emails "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Vasquez primarily relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no communications that concern his case specifically. *See* Mot. Vacate 4–9.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Here, Vasquez points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him.

Vasquez argues that *Williams* does not dictate the result of his case. *See* Reply 6–7. (He does not address *Shannon*, which was decided after the briefing was completed in this case.). He argues that he has presented additional evidence that warrants an evidentiary hearing to further explore any potential bias by Judge Bruce. *See id.* at 5–6; Mot. Vacate 5–9. Further, he argues that the Government cannot assert collateral estoppel based on the Seventh Circuit Judicial Council's resolution of the misconduct complaints filed against Judge Bruce, Reply 1–4, and that it is "fundamentally unfair" to him if the Court is "bound" by the results of those proceedings as he could not participate in them, Mot. Vacate 9.

The Court agrees that the Seventh Circuit cases and the Judicial Council's resolution do not "conclusively foreclose[]" a finding of actual bias as the Government suggests, *see, e.g.*, Resp. 23, but instead finds that the evidence Vasquez has submitted is sufficiently similar to the evidence at issue in *Williams* such that the same holding—that Vasquez fails to demonstrate actual bias or a risk of bias so high that it violates due process—is warranted.

Here, the additional evidence Vasquez submits to the Court consists of emails between Assistant United States Attorney ("AUSA") Tim Bass and the Department of Justice's Office of Inspector General ("OIG") and a memorandum paralegal Lisa Hopps wrote for the Deputy Director of the Executive Office for United States Attorneys ("EOUSA"). *See* Mot. Vacate 5–6.[3] He argues that these show that Judge Bruce "continued to operate as a part of USAO management," that Judge Bruce was biased against Bass, and that "Judge Bruce acts on his biases." *Id.* at 6.[4]

---

[3] Vasquez did not attach these documents to his motion but rather cites to them from the docket of *United States v. Nixon*, No. 2:15-cr-20057-JES-JEH (C.D. Ill.). Cites to this docket will take the form: Nixon ECF No. __.

[4] The following is a summary of this evidence.
   On December 5, 2017, Bass sent an email with the subject line "Follow-up" to OIG (which suggests this was not his first contact with OIG). *See* Dec. 5, 2017 12:32 PM Bass Email, Nixon ECF No. 213-3 at 9. He indicated that he could provide information to OIG about Judge Bruce's "repeated contact" with the current and past Acting United States Attorneys for the Central District of Illinois Patrick Hansen and John Childress. *Id.* Later that

7

The Court finds that this is simply more of the same type of evidence that the Seventh Circuit found failed to establish a due process violation in *Williams*. It shows that Judge Bruce had relationships with people in the USAO and suggests that he had had *ex parte* communications with them. *See Williams*, 949 F.3d at 1062. And it could show that Judge Bruce was biased against Bass. But it does not demonstrate any concerning communications regarding Vasquez's case or suggest that Judge Bruce's *ex parte* communications had an impact on Vasquez's sentencing. *See id.*

The Court thus finds that Vasquez has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is DENIED.

**C. Section 455(a)**

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Government does not address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he violated

---

day, Bass forwarded to OIG an email chain between himself, Hansen, and Childress, adding an explanation that on November 16, 2017, Judge Bruce contacted Childress by phone and less than an hour later Childress was sworn in as Acting United States Attorney; that same evening, Hansen informed a paralegal that he did not want to be assigned to *United States v. Shock*, No. 3:16-cr-30061 (C.D. Ill.); and Hansen and Childress both told the paralegal that they thought Judge Bruce was hostile to Bass. Dec. 5, 2017 1:53 PM Bass Email, Nixon ECF No. 213-1 at 37–40. He followed up the next day with an email to OIG stating that Judge Bruce had had repeated *ex parte* contact with Hansen and Childress and that Judge Bruce singled Bass out for providing a false and misleading response in *Shock* that was authored by Hansen, Bass, and another AUSA. Dec. 6, 2017 5:48 PM Bass Email, Nixon ECF No. 213-1 at 32–36. Bass had a call with OIG that day. *See* Dec. 6, 2017 9:01 PM Bass Email, Nixon ECF No. 213-1 at 30–32 (referencing a call). He followed up with an email to which he attached emails between Hopps and Judge Bruce which Bass believed showed a personal bias against Bass and Judge Bruce's willingness to engage in inappropriate *ex parte* contacts with the USAO about pending cases. *See id.* Bass stated his belief that "there [we]re reasonable grounds for OIG to review whether Mr. Hansen and Mr. Childress and Judge Bruce engaged in a concerted effort . . . to undermine and sabotage" the *Shock* case (a high-profile case), to cause Bass to be removed from the *Shock* case, and to interfere with the United States Attorney selection process. *Id.*

On August 13, 2018, Hopps provided a memorandum to the Deputy Director of the EOUSA about the *Shock* case. Hopps Mem., Nixon ECF No. 213-6. She stated that Judge Bruce "disparag[ed] [Bass] and his chances to become a magistrate judge" while on the phone with Hopps. *Id.* at 3. She stated that in another conversation, Judge Bruce told her that Bass "wouldn't even make it out of committee," which he did not. *Id.* She reported that Judge Bruce had close relationships with Hansen and Childress and that many in the USAO were "aware of [Judge Bruce's] dislike of [Bass]." *Id.* Finally, she reported that Judge Bruce had "been unable to disconnect himself from [their] office" and that it was like he was "a silent part of management." *Id.*

8

§ 455(a) by failing to recuse from Vasquez's case.[5]  Instead, it argues that this statutory claim is both untimely, Resp. 32–42, and not cognizable under § 2255, *id.* at 23–28.

  1. **Timeliness**

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Judgment was entered on Vasquez's conviction on January 23, 2018.  *See* Judgment 1. His conviction became final when his time to appeal passed on February 6, 2018.  *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[A]n unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b)(1)(A)(i) (providing that a criminal defendant has fourteen days from the entry of judgment to appeal); *cf. Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that a conviction becomes final when

---

[5] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit thus far.  *See, e.g., Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

the time for seeking direct review expires). Under § 2255(f)(1), then, Vasquez had until February 6, 2019 to file a § 2255 motion.[6]

Vasquez filed his letter requesting counsel before that date. But the Government argues that the motion was "not, and should not be construed as a § 2255 motion" that would "toll the limitation period." Resp. 42. Vasquez contends that the letter should be recharacterized as a § 2255 motion and that the Motion to Vacate relates back to the original motion. Reply 11–12.

Again, the *pro se* letter stated that Vasquez would like to file a motion for resentencing and asked for appointment of counsel. *See* Pro Se Mot. Resentencing 1. As both parties recognize, *see* Resp. 40; Reply 11, courts sometimes treat motions filed by prisoners as motions under § 2255 even if they are labeled differently. *See Castro v. United States*, 540 U.S. 375, 377 (2003). "Such recharacterization can have serious consequences for the prisoner" because "it subjects any subsequent motion under § 2255 to the restrictive conditions that federal law imposes upon a 'second or successive' . . . federal habeas motion." *Id.* (quoting § 2255(h)). Because of these consequences, the Supreme Court has held that a "court cannot . . . recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's 'second or successive' restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing." *Id.*

Vasquez contends that this procedure was followed but cites to a motion that he filed requesting an extension of time. Reply 11 (citing Mot. Extend Time, ECF No. 53)). In this motion, counsel indicated his opinion that "to move forward on a claim for a new sentencing

---

[6] The Government also makes an argument regarding § 2255(f)(4), Resp. 33, and spends many pages arguing that the Federal Public Defender's office strategically chose to preserve actual bias claims and not appearance of bias claims, *id.* at 34–42. As Vasquez does not argue for application of equitable tolling or mention § 2255(f)(4), *see* Reply 11–12, the Court does not address the Government's contentions.

hearing based upon Judge Bruce's conduct the Court would have to convert Mr. Vasquez'[s] letter, or counsel's supplemental pleading, into a motion to vacate pursuant to 28 U.S.C. § 2255." Mot. Extend Time ¶ 4.  And he noted that "[t]here are serious consequences to" such recharacterization, citing *Castro*. *Id*.  But this motion does not establish that the court warned Vasquez it intended to recharacterize his letter as a § 2255 motion or warned him about the consequences of recharacterization, as *Castro* requires.  Indeed, nothing on the docket suggests that the court took any action to recharacterize the letter as a § 2255 motion.  *Cf. Poe v. United States*, 468 F.3d 473, 476 (7th Cir. 2006) (noting that the court was unaware of any cases supporting "a rule requiring district courts to construe equivalent postconviction filings as § 2255 motions in order to help prisoners comply with AEDPA's one-year limitations period"); *Henderson v. United States*, 264 F.3d 709, 711 (7th Cir. 2001) ("Nothing in AEDPA says that a motion not labeled as a section 2255 motion shall nevertheless be deemed one if it could have been so labeled accurately.").

Accordingly, Vasquez's first § 2255 motion was not filed until March 2020, when counsel filed the Motion to Vacate, and it was thus untimely filed.  The § 455(a) claim, therefore, must be dismissed as untimely.

### 2. Cognizability

Even if the Court found that the § 455(a) claim was timely, it would not warrant relief.

Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346.  The

11

"appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[7]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[8] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[9]

---

[7] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[8] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[9] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 48 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but explained that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

---

resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

13

because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Vasquez has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *cf. Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Vasquez's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that

nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, he was sentenced below his Guidelines range.

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Here, Vasquez has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

### III. Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Vasquez has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Ernesto Vasquez's *pro se* motion for resentencing, ECF No. 52, is MOOT, and the counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 54, is DENIED. The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-02061-SLD.

Entered this 27th day of March, 2023.

>   s/ Sara Darrow
>   SARA DARROW
>   CHIEF UNITED STATES DISTRICT JUDGE